SAUSA: Daniel K. Roque

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------ X<br>　　　　　　　　　　　　　　　　　　　　　　:<br>UNITED STATES OF AMERICA　　　　　　 :<br>　　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　- v. -　　　　　　　　　　　　 :<br>　　　　　　　　　　　　　　　　　　　　　　:<br>CHANEAH NEWTON,　　　　　　　　　　　 :<br>　　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　Defendant.　　　　:<br>　　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　　　　:<br>------------------------------------------------------------ X | **25 MAG 726**<br><br>**SEALED COMPLAINT**<br><br>Violations of 18 U.S.C.<br>§§ 641, 1028A(a)(1)<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

　　　　NICHOLAS CAVALCANTI, being duly sworn, deposes, and says that he is a Special Agent with the United States Postal Service ("USPS"), Office of Inspector General ("OIG"), and charges as follows:

## COUNT ONE
(Theft of Government Funds)

　　　　1.　　From at least in or about July 2023, up to and including at least in or about July 2024, in the Southern District of New York and elsewhere, CHANEAH NEWTON, the defendant, knowingly embezzled, stole, purloined, and converted to her use and the use of another, a record, voucher, money, and thing of value of the United States and a department and agency thereof, to wit, the U.S. Department of the Treasury, which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to her use and gain, knowing it to have been embezzled, stolen, purloined, and converted, to wit, NEWTON processed and cashed Treasury checks issued to other persons without having lawful authority to do so.

(Title 18, United States Code, Sections 641 and 2.)

## COUNT TWO
(Aggravated Identity Theft)

　　　　2.　　From at least in or about July 2023, up to and including at least in or about July 2024, in the Southern District of New York and elsewhere, CHANEAH NEWTON, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, NEWTON used the driver's license identification numbers, other state identification numbers, or passport numbers ("ID numbers") of other persons to commit the theft of Government funds charged in Count Two of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with the OIG, and I have been personally involved in the investigation of this matter. I base this affidavit on that experience; on my conversations with other law enforcement officials; and on my examination of various reports, records, and surveillance footage. Because this affidavit is submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview of the Scheme

4. As described further below, from at least in or about July 2023, to at least in or about July 2024, CHANEAH NEWTON, the defendant, was a window clerk at a particular U.S. Postal Service post office (the "Post Office"), whose job responsibilities included cashing Treasury checks for USPS customers. In order to process those checks, USPS required her to document, on the backs of the checks, two forms of identification from the customers to confirm that they were the intended payees of the Treasury checks. Despite these protocols, NEWTON used her position to steal the cash associated with Treasury checks in the name of others, fabricating or using the identification information of others in doing so.

## Process for Cashing Treasury Checks

5. Based on my training, experience, and participation in this investigation, and from my review of publicly available information, I have learned the following, in substance and in part:

a. The U.S. Department of the Treasury issues Treasury checks on behalf of various government agencies, including the Internal Revenue Service, Social Security Administration, Veterans Affairs, and Office of Personnel Management. Generally, the front of a Treasury check contains the name and address of the recipient. The front of the check may also indicate the purpose of the payment, for example, a tax refund for a taxpayer or a retirement benefit for a federal worker.

b. After the intended payees receive their Treasury checks, the intended payees may bring the checks to a USPS post office to cash them. A USPS Sales Services and Distribution Associate also known as a window clerk receives the Treasury checks from walk-in customers at a teller window; reviews those checks and the accompanying identification information of the customers to confirm that they are, in fact, the intended recipients of the checks; and cashes the checks for the customers.

6. Based on my training and experience, I know that the window clerks at the Post Office generally engage in the following procedure to accept, review, and cash Treasury checks presented by USPS customers:

a. Once a customer approaches a teller window, he or she hands the Treasury check to the window clerk;

    b. The customer then submits two forms of identification to the window clerk. Often these forms of identification include a driver's license and a credit or debit card;

    c. The window clerk, while at the window, runs the Treasury check through a round dater, a machine which timestamps any check;

    d. The window clerk ensures that the back of the Treasury check is endorsed or signed and then, on the back of the check, the window clerk writes what two forms of identification were presented by the customer to the window clerk to allow the window clerk to confirm that the customer was the intended payee;

    e. The window clerk again runs the Treasury check through the round dater. At that point, the round dater places a stamp on the check that includes the date and time of the transaction;

    f. The window clerk opens his or her cash register, takes cash out of the register, and hands the cash to the customer;

    g. Generally, the window clerk then places the check inside the register, and the transaction is complete; and

    h. The lead window clerk collects and tallies all Treasury checks, Postal Service commercial checks, money orders, cash, and coins from all of the clerks' registers or stations. The tally is recorded on a deposit ticket, which is signed by the lead window clerk. The deposit ticket, collected checks, and currency are ultimately deposited with a particular post office's bank.

### **NEWTON Steals Cash Using Treasury Checks**

  7. Since in or about November 2023, I have participated in an investigation of CHANEAH NEWTON, the defendant, for her involvement in stealing money using Treasury Checks while employed as a window clerk. Based on my participation in that investigation, including my review of a USPS database, which records information, among other things, about individual transactions conducted by USPS employees (the "USPS Database Report"), I have learned that between in or about July 2023 and in or about July 2024, NEWTON cashed approximately 251 Treasury checks in the names of various individuals (totaling approximately $501,591).

  8. Based on my review of surveillance footage of CHANEAH NEWTON, the defendant,[1] while she was working in the Post Office; my training and experience; and my review of the USPS Database Report, I have learned the following:

---

[1] I was able to identify the individual in the surveillance videos as CHANEAH NEWTON, the defendant, by comparing the individual in the surveillance video to a photograph of CHANEAH NEWTON, the defendant, from her identification card from the New Jersey Motor Vehicle Commission.

      a.    Surveillance footage captured NEWTON processing approximately 131 Treasury checks issued to other persons, totaling approximately $257,712 (the "131 Treasury Checks").

      b.    During these transactions associated with the 131 Treasury Checks, during the period from in or about July 2023 through in or about July 2024, NEWTON generally cashed the checks: (i) with no customers at her window or (ii) while she simultaneously serviced other USPS customers at her window. During both types of transactions, she generally took cash out of her register and placed the cash on her person.

<u>February 12, 2024 Transactions</u>

      c.    For example, on or about February 12, 2024, at approximately 4:40 p.m., surveillance footage shows NEWTON at her teller window with multiple Treasury checks in her cash register. At approximately 4:41 p.m., she cashed one of those checks ("Treasury Check-1") in the amount of $1,800. At approximately 4:45 p.m., NEWTON cashed a second check in the amount of $1,800 ("Treasury Check-2"). NEWTON was not listed as the payee on Treasury Checks-1 or -2. After she cashed these checks, she then placed Treasury Check-2 in her cash register. At approximately 4:46 p.m., she began counting cash from her register. A still image of NEWTON from surveillance video, copied below, shows NEWTON at her workstation in the Post Office taking cash out of her own cash register at approximately 4:50 p.m., minutes after cashing Treasury Checks-1 and -2, and placing those funds on her person.



<u>March 23, 2024 Transactions</u>

      d.    Similarly, on or about March 23, 2024, at approximately 3:38 p.m., surveillance footage appears to show several Treasury checks in NEWTON's cash register. At

approximately 3:39 p.m., NEWTON cashed one of those checks ("Treasury Check-3") in the amount of $1,800. At approximately 3:40 p.m., she cashed a fourth Treasury check ("Treasury Check-4") in the amount of $1,400. NEWTON was not listed as the payee on Treasury Checks-3 or -4. During these two transactions, a large piece of cardboard was placed in front of her teller window. That placement of cardboard generally indicates that a window clerk is not currently servicing USPS customers. A still image of the cardboard is reproduced below.



At approximately 3:54 p.m., surveillance footage appears to show additional Treasury checks in NEWTON's cash register. At approximately 3:55 p.m., she cashed one of those checks even though no USPS customer was present at her teller window ("Treasury Check-5"). Surveillance footage further recorded her, at approximately 4:09 p.m., taking a Treasury check out of a white envelope ("Treasury Check-6"), which was in her cash register. She then appeared to cash Treasury Check-6 and began counting money from her cash register. At approximately 4:13 p.m., a still image of NEWTON from surveillance video (immediately below) shows her placing funds in the white envelope.

5



As seen in another still image below, at approximately 4:28 p.m., NEWTON wrote on the backs of Treasury checks.



At approximately 4:34 p.m., NEWTON placed the white envelope in a red bag.



And at approximately 4:41 p.m., NEWTON put on a coat, picked up the red bag, and left her window.



9. Based on my training and experience and conversations with USPS staff, I have learned that Treasury checks processed by CHANEAH NEWTON, the defendant, were collected and deposited with the Post Office's bank.

10. In connection with my investigation, I obtained images of the fronts and backs of the approximately 131 Treasury Checks. Although the backs also contain a stamp from the Post Office that includes the dates and times of the transactions, some of the backs have no identification information or signatures from the payees, while others have information that is inaccurate.

11. For the approximately 131 transactions for which video surveillance recorded CHANEAH NEWTON, the defendant's, processing of or cashing the Treasury checks, I also investigated the ID numbers written by or reviewed and processed by NEWTOWN on the backs of the checks. I performed this inquiry by searching a law enforcement database that contains information from state motor-vehicle records. For approximately 33 of the 131 transactions, NEWTON processed the checks without writing any ID number. For approximately 84 of the 131 transactions, the backs of the checks did contain purported ID numbers, but law enforcement databases had no record of these ID numbers; therefore, these invalid ID numbers appear to have been fabricated. For approximately at least 14 of the 131 transactions, the backs of the checks contained purported ID numbers that exist in law enforcement databases, but which do not match the payees' names on the front of the checks.

12. In addition to the investigative steps discussed above that I performed on the approximately 131 transactions captured on surveillance footage, I also reviewed another approximately 120 Treasury checks processed by CHANEAH NEWTON, the defendant, between July 2023 and July 2024, totaling approximately $243,879. These approximately 120 transactions were not recorded by surveillance cameras. For each of these transactions, I investigated the ID numbers written or reviewed by NEWTOWN on the backs of the checks by searching the above-referenced law enforcement database. For approximately 46 of the 120 transactions, the backs of did not contain any ID numbers. For approximately 50 of the 120 transactions, law enforcement databases had no record of the ID numbers written on the backs of the checks. For approximately 23 of the 120 transactions, the backs of the checks contained purported ID numbers that exist in law enforcement databases, but which do not match the payees' names and addresses.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of CHANEAH NEWTON, the defendant, and that she be arrested and imprisoned, or bailed, as the case may be.

    s/ Nicholas Cavalcanti
Nicholas Cavalcanti
Special Agent
United States Postal Service
Office of Inspector General

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 3rd day of March, 2025.

_____
THE HONORABLE ROBYN F. TARNOFSKY
United States Magistrate Judge
Southern District of New York